IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TENODEY JUSTICE,<br><br>       Plaintiff,<br><br>       v.<br><br>FOOD SERVICES INC. OF<br>GAINESVILLE,<br><br>       Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:25-cv-15494-KMW-EAP<br><br>**OPINION** |

**Miriam S. Edelstein, Esq.**
COSTELLO & SILVERMAN, LLC

*Counsel for Plaintiff Tenodey Justice*

**Nicole A. Alaimo, Esq.**
**Aimee S. Lin, Esq.**
GOLDBERG SEGALLA LLP

*Counsel for Defendant Food Services Inc. of Gainesville*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Tenodey Justice ("Plaintiff") brings this action against her former employer, Food Services Inc. of Gainesville ("FSIG"), alleging retaliatory discharge under the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. ANN. § 10:5-12(d). Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff has opposed. For the reasons set forth below, the Motion is granted.

## II.    BACKGROUND

FSIG is a federal contractor that provides food services to military personnel at Fort Dix, which is part of Joint Base McGuire–Dix–Lakehurst in Burlington County, New Jersey. Plaintiff was employed as a cook by FSIG from approximately November 16, 2023, until her termination on February 13, 2025. She alleges that she was terminated because she objected to sexist comments made by a manager about working with other women.

On July 30, 2025, Plaintiff filed this action in the Superior Court of New Jersey, Law Division, Burlington County. The Complaint asserts a single claim for retaliation under the NJLAD. On September 12, 2025, FSIG removed the action to this Court pursuant to 28 U.S.C. § 1441(a), invoking diversity-of-citizenship jurisdiction.[1]

Following removal, FSIG filed the instant Motion to Dismiss under Rule 12(b)(6). The Motion is fully briefed and thus ripe for disposition.

## III.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it

---

[1] FSIG is incorporated and maintains its principal place of business in Georgia. Plaintiff is a citizen of New Jersey. It is undisputed that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

2

provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

## IV.    DISCUSSION

In its Motion, FSIG contends that Plaintiff's NJLAD claim fails as a matter of law because it is precluded by the federal enclave doctrine. More specifically, FSIG states that the alleged conduct underlying her claim occurred at Fort Dix—a federal enclave over which the federal government exercises exclusive legislative jurisdiction. Because the New Jersey Legislature ceded that jurisdiction to the United States prior to enacting the NJLAD, FSIG maintains that Plaintiff cannot pursue her retaliation claim and that the Complaint should be dismissed with prejudice.

### A.    Federal Enclave Doctrine

The federal enclave doctrine arises out of the Enclave Clause of Article 1 of the United States Constitution, which grants Congress the power to

> exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

U.S. CONST. art. I, § 8, cl. 17. Interpreting this provision, the Supreme Court has held that if the United States acquires state land for a constitutionally authorized purpose "with the consent of the state legislature"—"or if the land is acquired without such consent and later the State gives its

3

consent"—that land becomes a "federal enclave" subject to the "exclusive legislative jurisdiction" of the federal government. *Paul v. United States*, 371 U.S. 245, 264, 267 (1963) (internal quotation marks omitted). Once exclusive federal jurisdiction attaches, the authority to legislate for the enclave passes to Congress and generally bars the State from enacting laws with respect to that territory.[2] *See id.* at 268; *see also James v. Dravo Contracting Co.*, 302 U.S. 134, 141–42 (1937).

However, the State's cession of legislative jurisdiction does not mean that "every vestige of the laws of the former sovereignty must vanish." *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99 (1940). On the contrary, any state law in force at the time of cession will generally continue to govern the enclave unless and until it is abrogated by Congress, and provided that the state law does not otherwise conflict with federal policy. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611–12 (2019); *see also Paul*, 371 U.S. at 269. But because a State generally may not legislate with respect to a federal enclave after ceding its jurisdiction, "only state law existing at the time of the [cession] remains enforceable, not subsequent laws." *Paul*, 371 U.S. at 268. "This approach ensures 'that no area however small will be without a developed legal system for private rights,' while simultaneously retaining the primacy of federal law and requiring future statutory changes to be made by Congress." *Parker Drilling*, 587 U.S. at 611–12 (quoting *Sadrakula*, 309 U.S. at 100).

Consistent with these principles, federal courts have generally barred state-law claims arising on federal enclaves where the asserted cause of action depends on a state law that was not in force when exclusive legislation jurisdiction vested in the United States. *See, e.g., Manning v. Gold Belt Falcon, LLC*, 681 F. Supp. 2d 574, 576 (D.N.J. 2010); *see also Allison v. Boeing Laser*

---

[2] For lands acquired after 1940, Congress has required the United States to formally accept jurisdiction ceded by a state. *See* 40 U.S.C. § 3112; *see also Adams v. United States*, 319 U.S. 312, 313–15 (1943). Because jurisdiction over the land at issue in this case was ceded prior to 1940, the Court presumes the United States' acceptance of jurisdiction absent evidence of contrary federal content. *See Silas Mason Co. v. Tax Comm'n*, 302 U.S. 186, 207–08 (1937).

4

*Tech. Servs.*, 689 F.3d 1234, 1236 (10th Cir. 2012); *Welch v. S. Ca. Edison*, 378 F. App'x 621, 623 (9th Cir. 2010).

There are two important qualifications to this rule. First, a state law enacted after cession may apply within a federal enclave where Congress has specifically authorized its application. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988) ("It is well settled that the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation."). Congress has done so for several categories of matters, including wrongful-death and personal-injury claims, 28 U.S.C. § 5001; workers' compensation, 40 U.S.C. § 3172; unemployment compensation, 26 U.S.C. § 3305(d); and hunting, fishing, and trapping regulations, 10 U.S.C. § 2671.

Second, a state-law claim may proceed where the State, at the time jurisdiction was ceded, expressly reserved authority to legislate over the relevant subject matter. *See Paul*, 371 U.S. at 268 ("Since a State may not legislate with respect to a federal enclave unless it reserved the right to do so when it gave its consent to the purchase by the United States, only state law existing at the time of the acquisition remains enforceable, not subsequent laws."). Historically, the most common reservation accompanying cession has been the State's retention of a limited right to permit civil and criminal process issued under state authority to be served or executed within the enclave. *See, e.g., Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 533–34 (1885); *James*, 302 U.S. at 149; *Paul*, 371 U.S. at 266; *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1238 (10th Cir. 2012). The reason for this is rather straightforward: it prevents a federal enclave from becoming a "sanctuary" for fugitives and other persons seeking to evade state-court process. *United States v. Unzeuta*, 281 U.S. 138, 143 (1930); *see also Lowe*, 114 U.S. at 533; *United States v. Andem*, 158 F. 996, 1003 (D.N.J. 1908).

5

The present motion turns on a narrow question: whether Plaintiff's NJLAD claim is barred by the federal doctrine. The parties do not dispute the baseline predicates necessary to answer that question: Plaintiff's claim occurred at Fort Dix; Fort Dix is a federal enclave over which the New Jersey legislature has ceded legislative jurisdiction to the United States; and the NJLAD was enacted after that cession was effectuated. Because Plaintiff's retaliation claim is predicated on a state law that was not in force at the time of cession, it thus appears, at least at first blush, that the federal enclave doctrine bars her claim. *See Paul*, 371 U.S. at 268.

Seeking to avoid that result, Plaintiff invokes the second exception previously discussed, but ultimately argues that the federal jurisdiction over Fort Dix is not truly *exclusive* in any meaningful sense. Far from it, she claims that, when the legislative jurisdiction transferred to the federal government, the New Jersey Legislature retained the authority to legislate for the enclave generally and concurrently with the United States. On that basis, she reasons that post-cession enactments, including the NJLAD, govern the affairs of Fort Dix and that her claim is consequently not barred by the federal enclave doctrine.

The scope of the United States' legislative jurisdiction over Fort Dix is not a novel issue. Federal and state courts at all relevant levels have uniformly recognized precisely what Plaintiff disavows: that the "Federal Government exercises exclusive jurisdiction over the entire area within Fort Dix, including the state and county roads that pass through it." *Greer v. Spock*, 424 U.S. 828, 830 (1976) (citing N.J. STAT. ANN. § 52:30-2); *see also Fort Dix Apartments Corp. v. Borough of Wrightstown*, 225 F.2d 473, 474 (3d Cir. 1955); *Manning v. Gold Belt Falcon, LLC*, 681 F. Supp. 2d 574, 576 n.3 (D.N.J. 2010); *Petition of Salem Transp. Co. of N.J.*, 264 A.2d 47, 48 (N.J. 1970); *State In Int. of D.B.S.*, 349 A.2d 105, 107 (N.J. Super. Ct. App. Div. 1975); *Bd. of Chosen Freeholders of Burlington Cnty. v. McCorkle*, 237 A.2d 640, 641 (N.J. Super. Ct. Law. Div. 1968).

6

The statutory basis for that treatment is unambiguous. In 1907, the New Jersey Legislature enacted a general cession statute supplying the State's standing consent to the federal acquisition of state land, "by purchase, condemnation or otherwise," for constitutionally authorized purposes. L. 1907, c. 19, § 1; N.J. STAT. ANN. § 52:30-1. In that same enactment, the Legislature prospectively ceded "[e]xclusive jurisdiction in and over any land so acquired by the United States" and did so "for all purposes," subject only to the State's retained authority for "the service of process issued out of any of the courts of this state in any civil or criminal proceeding." L. 1907, c. 19, § 2; N.J. STAT. ANN. § 52:30-2. Three decades later in 1938, the Legislature enacted a second statute specifically addressing the cession of jurisdiction over certain lands in Burlington and Ocean Counties, which were then known as "Camp Dix." *See* L. 1938, c. 354. The statute acknowledged that the United States had previously acquired Camp Dix for "military purposes" and provided that the jurisdiction ceded to it would continue only so long as the United States continued to both "own said land" and "occupy and use the same for military purposes." *Id.* § 1. Here too, the Legislature expressed a substantively identical retention of authority, albeit in different terms: New Jersey would retain "concurrent jurisdiction with the United States," but only "so far as" civil, criminal, and other state process could be executed within the enclave. *Id.* § 2.

Relying solely on the 1938 enactment, Plaintiff isolates the term "concurrent jurisdiction" and treats it as a "reservation" of New Jersey's general authority to regulate persons and activities on Fort Dix lands. On that view, the NJLAD's applicability follows automatically: it is simply one exercise of the broad legislative power Plaintiff says New Jersey retained.

Plaintiff is mistaken. Even assuming the 1938 statute is the only enactment relevant to the scope of the United States' jurisdiction, Plaintiff's theory fails because she stops reading the statute too soon. The statute did not preserve New Jersey's general authority to enact substantive law for

7

Fort Dix. Rather, it retained "concurrent jurisdiction" only "so far as" necessary to permit the execution of civil, criminal, and other state process within the enclave. This wording reflects a common, limited reservation permitting state process to run within a federal enclave. *See Fort Leavenworth R.R. Co. v. Lowe*, 114 U.S. 525, 533–34 (1885); *United States v. Unzeuta*, 281 U.S. 138, 143 (1930).

Plaintiff's reading is not only contrary to the statutory text; it is also structurally unsound. A State "may not legislate with a federal enclave unless it reserved the right to do so when it gave its consent to the [acquisition] by the United States." *Paul v. United States*, 371 U.S. at 268. A reservation carves out some portion of that authority; it does not leave the State with the whole. But under Plaintiff's reading, New Jersey did not meaningfully cede any jurisdiction at all. This is not an argument for an exception to exclusive federal jurisdiction so much as it is a denial of exclusivity altogether. That position cannot be reconciled with the terms of cession or with the settled understanding that Fort Dix is an exclusive federal enclave.

However Plaintiff wishes to account for the United States' acquisition of Fort Dix, she does not dispute that New Jersey ceded jurisdiction over it no later than 1938. Nor does she dispute that the NJLAD was enacted afterward, in 1945. In the absence of congressional authorization or a relevant reservation of legislative authority, the NJLAD cannot supply the rule of decision for conduct occurring within the enclave. Because Plaintiff's retaliation claim is barred by the federal enclave doctrine, FSIG's Motion must be granted. *See Morris v. Eberle & BCI, LLC*, No. 1:13-cv-06113, 2014 WL 4352872, at *3 (D.N.J. Sept. 3, 2014) (holding that the federal enclave doctrine "clearly bar[red]" an NJLAD claim asserted by a former employee of a food-services contractor at Fort Dix).

8

## B.    Leave to Amend

Plaintiff has separately asked that, to the extent the Court dismisses her NJLAD claim, it do so without prejudice. That request rests not on any proposed amendment that would cure the defect in the NJLAD claim itself, but on Plaintiff's representation that she has filed a retaliation charge with the U.S. Equal Employment Opportunity Commission ("EEOC") based on the same alleged facts. However, she explains that she is still awaiting the issuance of a right-to-sue letter, which has been delayed by recent lapses in federal appropriations resulting in the closure of EEOC offices.

That circumstance does not warrant dismissal of the NJLAD claim without prejudice. The defect in that claim is legal, not factual: the NJLAD does not apply to the alleged conduct at Fort Dix, and so Plaintiff does not have a claim under it. However, the Court will account for the procedural posture Plaintiff identifies. If the EEOC issues a right-to-sue notice, Plaintiff may submit a letter asking that this matter be reopened for the limited purpose of seeking leave to amend. Any such letter shall attach the right-to-sue notice and a proposed amended complaint asserting any timely Title VII claim Plaintiff seeks to pursue.

## V.    CONCLUSION

For all of the reasons set forth above, FSIG's Motion to Dismiss is granted.


Date: June 23, 2026


KAREN M. WILLIAMS, U.S.D.J.

9